IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL T. SWIDAS, | ) | CASE NO. 1:13-cv-02260 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| BRIGHAM SLOAN, Warden, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Michael T. Swidas ("Petitioner" or "Swidas"), represented by counsel, filed
this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1 ("Petition"). Respondent filed an
Answer/Return of Writ. Doc. 6. Petitioner filed a Traverse. Doc. 10.

Swidas challenges the constitutionality of his conviction and sentence in *State v. Swidas*,
Case No. 08 CR 000719 (Lake County). Following a jury trial, Swidas was convicted on two
counts of felonious assault, both with a firearm specification pursuant to R.C. 2941.145 and a
motor vehicle firearm specification pursuant to R.C. 2941.146;[1] one count of tampering with
evidence; and one count of carrying concealed weapons.[2] Doc. 6-1, pp. 15-23, 24-27, 116, 118.[3]

---

[1] The firearm specification under R.C. 2941.146 involved discharging a firearm from a motor vehicle. Doc. 6-1, pp. 4-5. As discussed below, the Supreme Court of Ohio accepted one of Swidas's assignments of error which dealt with the applicability of R.C. 2941.146 to a defendant who discharges a firearm while standing outside a motor vehicle. *State v. Swidas*, 133 Ohio St.3d 460, 463 (2012). The Supreme Court of Ohio reversed the Ohio Court of Appeals' decision with respect to the motor vehicle firearm specification concluding that "R.C. 2941.146 is not applicable when a defendant fires a weapon while standing with both feet planted on the ground with no substantial physical connection with a motor vehicle." *Id.* at 466. The Supreme Court of Ohio remanded the matter to the trial court for resentencing. *Id.*

[2] Swidas was found not guilty on Count One - attempted murder. Doc. 6-1, pp. 12, 118.

[3] Page number references refer to the ECF page number for the cited ECF Doc.

The trial court sentenced Swidas to an aggregate term of 22 years in prison.[4]  Doc. 6-1, pp. 24-27, 116-117, 118.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  For the reasons set forth below, the undersigned recommends that Swidas's Petition (Doc. 1) be **DENIED**.

## I.    Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Ohio Court of Appeals summarized the facts underlying Swidas's conviction as follows:

> {¶ 2} Appellant and one of the victims, Ulysses Altizer, had known one another for approximately ten years. Over the years, appellant and Altizer had engaged in physical altercations.

> {¶ 3} In November 2008, at approximately 12:00 a.m., Altizer, along with one of his friends, Joseph Naples, arrived at a local bar. Unbeknownst to Altizer, appellant was also at the bar. On his way into the restroom, Altizer noticed appellant and said, "Hey, Sweets, how you doin'?" Appellant responded, "Better than you." When Altizer came out of the restroom, appellant was gone. At approximately 1:30 a.m., Altizer and Naples exited the bar. Upon their exit, appellant yelled, "Hey, bitch." Altizer testified that as he turned around, he saw appellant standing at his vehicle holding a firearm. Appellant's vehicle was backed into a parking space, his door was open, and he was standing between the door and the vehicle. Altizer stated that appellant started shooting. Appellant fired five shots, one of which struck Altizer in his finger.

> {¶ 4} Naples testified that as he was about to open the passenger's door of Altizer's vehicle, he heard a male yell, "What bitches." He glanced over his shoulder and observed an unidentifiable man by the driver's side of a vehicle. Naples then stated he heard approximately five gunshots.

---

[4] Following the Supreme Court of Ohio's reversal with respect to the motor vehicle firearm specification, on remand, the trial court sentenced Swidas to a total of 17 years in prison.  Doc. 6-1, pp. 260-264.

{¶ 5} Appellant immediately left the scene in his vehicle. A police officer responding to the incident observed appellant's vehicle and began to follow him. Noticing that the police officer was about to follow him, appellant threw the firearm out of the window of his vehicle. Appellant was apprehended, and the firearm was subsequently located by the police.

*State v. Swidas*, 2010 WL 5550223, *1 (Ohio App. Dec. 23, 2010); *see also* Doc.6-1, pp. 117-118 (Eleventh District Ohio Court of Appeals Judgment Entry, Case No. 2009-L-104).

## II.     Procedural Background

### A.     State Conviction

The Lake County Grand Jury indicted Swidas on five counts: (1) Count 1 – attempted murder in violation of R.C. § 2923.02, with firearm specifications; (2) Count 2 – felonious assault (as to Ulysses S. Altizer, IV) in violation of R.C. 2903.11(A)(2), with firearm specifications; (3) Count 3 – felonious assault (as to Joseph Naples) in violation of R.C. 2903.11(A)(2), with firearm specifications; (4) Count 4 – tampering with evidence in violation of R.C. 2921.12(A)(1); and (5) Count 5 – carrying concealed weapons in violation of R.C. § 2923.12(A)(2).  Doc. 6-1, pp. 3-6.   Swidas enter a plea of not guilty.  Doc. 6-1, pp. 7-9.

A jury found Swidas not guilty on Count 1 and guilty on Counts 2 through 5, including the specifications contained in the indictment. Doc. 6-1, pp. 12-27.   On July 23, 2009,[5] a sentencing hearing was conducted and the trial court sentenced Swidas to eight years in prison on Count 2; three years in prison on Count 3; three years in prison on Count 4; and one year in prison on Count 5.  Doc. 6-1, p. 25.  The trial court ordered Counts 2, 3, and 4 to run consecutive to each other but concurrent with Count 5.  Doc. 6-1, p. 25.  The trial court also ordered Swidas to serve an additional eight years in prison with respect to the firearm specifications contained in

---

[5] The judgment entry of sentence was filed on July 31, 2009.  Doc. 6-1, pp. 24-27.

Count 2[6] (three years as to the firearm specification pursuant to R.C. § 2941.145 and five years as to the firearm specification pursuant to R.C. § 2941.146).  Doc. 6-1, p. 25.  The trial court ordered the firearm specifications to run consecutive to each other and Swidas was ordered to serve the eight year firearm specification sentence prior to and consecutive to the sentences for the underlying felonies for a total of 22 years in prison.  Doc. 6-1, pp. 25-26.

**B.      Direct appeal**

On August 24, 2009, Swidas, through counsel, filed a Notice of Appeal in the Eleventh District Court of Appeals from the trial court's July 31, 2009, judgment entry of sentence.  Doc. 6-1, pp. 28-40.   In his appellate brief filed on February 25, 2010 (Doc. 6-1, pp. 41-71), Swidas raised the following nine assignments of error:

1.   The trial court erred by failing to dismiss the motor vehicle firearm specifications and find that R.C. 2941.146 is unconstitutionally vague as applied to appellant.

2.   The trial court erred by failing to dismiss the motor vehicle firearm specifications and find that R.C. 2941.146 violates appellant's right to equal protection, as guaranteed by the Fourteenth Amendment to the United States Constitution.

3.   The trial court erred by sentencing appellant to consecutive sentences for R.C. 2941.146 and R.C. 2941.145, violating the constitutional prohibition against double jeopardy.

4.   The trial court erred by failing to declare a mistrial when the jury expressly stated that it was hopelessly deadlocked and that further deliberations would have no affect on the deadlock.

5.   The trial court erred by instructing the jury as to "flight," thereby denying appellant his right to a fair trial and due process of law, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Sections 10 and 16 of the Ohio Constitution.

6.   The trial court erred and abused its discretion by instructing the jury, over repeated objections, that appellant had fled the scene and that flight may

---

[6] The firearm specifications in Count 3 were merged with the firearm specifications in Count 2.  Doc. 6-1, p. 26.

indicate consciousness or awareness of guilt, where the facts did not support such an instruction.

7. Appellant's convictions for felonious assault upon Joseph Naples, tampering with evidence and the motor vehicle firearms specifications are not supported by sufficient evidence.

8. The appellant's convictions are against the manifest weight of the evidence.

9. The trial court's imposition of a sentence greater than the minimum term permitted by statute, it's imposition of a maximum sentence, and its imposition of consecutive sentences, based upon findings not made by a jury nor admitted by appellant is contrary to law and violates appellant's right to a trial by jury and due process, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

Doc. 6-1, pp. 42-44.  On May 7, 2010, the State filed its brief.  Doc. 6-1, pp. 72-115.  On December 28, 2010, the Court of Appeals affirmed the judgment of the trial court.  Doc. 6-1, pp. 116-144.

Through counsel, on February 11, 2011, Swidas filed a Notice of Appeal with the Supreme Court of Ohio.   Doc. 6-1, pp. 145-146.  In his Memorandum in Support of Jurisdiction (Doc. 6-1, pp. 147-165), Swidas raised the following nine propositions of law:

1. R.C. 2941.146 is unconstitutionally vague as applied to a defendant who discharges a firearm while standing outside a motor vehicle.

2. R.C. 2941.146 creates a separate class of offenders, subject to greater punishment, without a rational relationship to a legitimate state purpose.

3. R.C. 2941.145 is a lesser included offense of R.C. 2941.146.

4. A trial court errs by failing to declare a mistrial where a jury states that it is hopelessly deadlocked and that no amount of time could change their decision.

5. A trial court's instructing a jury that the defendant fled the scene of an offense, and that such flight might indicate consciousness or awareness of guilt, constitutes an unconstitutional comment upon the evidence.

6.  A trial court's instruction to the jury that the defendant fled the scene of a criminal offense is an abuse of discretion where the facts do not support such an instruction.

7.  A criminal defendant's convictions are not supported by sufficient evidence, where the record reveals that the state fails to present any evidence of one or more of the elements of the charges.

8.  A criminal defendant's convictions are against the manifest weight of the evidence, where the record reveals that the jury clearly lost its ways in relying upon unproven, unreliable, uncertain, conflicting, and contradictory evidence.

9.  A trial court errs by sentencing a criminal defendant to serve a term greater than the minimum term, the maximum, and consecutive terms of incarceration based upon certain factual findings where such findings were not made by the jury nor admitted by the defendant.

Doc. 6-1, pp. 148-149.  On March 11, 2011, the State filed its Memorandum in Response.  Doc. 6-1, pp. 166-184.

On May 4, 2011, the Supreme Court of Ohio accepted Swidas's appeal on Proposition of Law No. 1.  Doc. 6-1, p. 185.  Following briefing on the merits (Doc. 6-1, pp. 186-204, 205-236, pp. 237-247), on October 11, 2011, the Supreme Court of Ohio reversed Swidas's sentence on the firearm specification and remanded the matter to the trial court for resentencing.  Doc. 6-1, pp. 248-259.  The Supreme Court of Ohio held that "R.C. 2941.146 is not applicable when a defendant is standing outside of his vehicle."  Doc. 6-1, p. 254, ¶ 14.

On November 30, 2012, the trial court resentenced Swidas to a total of 17 years in prison. Doc. 6-1, pp. 260-264.

## C.  Federal habeas corpus

On October 11, 2013, Swidas, through counsel, filed his Petition (Doc. 1) asserting two grounds for relief.  Doc. 1, pp. 20-24.  Each ground for relief is discussed more fully below in Section III.B.

### III.    Law and Analysis

**A.    Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[7]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v.*

---

[7] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

*Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions

in the state criminal justice systems,' not a substitute for ordinary error correction through

appeal." *Harrington*, 562 U.S. 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307,

332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v.

Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v.

Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.**    **Grounds for relief**

**1.  Ground  One**

**Ground One**: THE PETITIONER'S CONVICTIONS WERE OBTAINED IN VIOLATION OF HIS RIGHTS PURSUANT TO THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AS SUCH WERE THE RESULT OF COERCION BY THE TRIAL COURT TO REACH VERDICTS IN A SITUATION WHERE THE JURY CLEARLY AND REPEATEDLY INDICATED THAT IT WAS DEADLOCKED.

**Supporting Facts**:

The jury sent a question back to the court after about five hours of deliberation, asking "What do we do if we are hung on two charges and agree on three charges?"  Defense counsel argued that the jury was hung, and without waiving that argument, agreed that the simple instruction of "keep deliberating" was appropriate.  Approximately three and a half hours later, the jury sent another message to the court, stating "We are hopelessly deadlocked on two of the five charges . . . No amount of deliberation will change this outcome."  The court proposed giving the Howard charge as set forth in OJI 429.09.  Defense counsel objected, stating that, under the circumstances, and based upon the express terminology of the jury's statement, the jury should be considered hung, and a mistrial declared.  Again, without waiving objection, counsel agreed to the form of the response, which the trial court then gave to the jury.

The jury returned another question the next day, asking about the possibility of Defendant being retried with new evidence if the jury is declared to be hung. For the third time, counsel objected, arguing that the jury was hung. Counsel noted that the jury clearly felt that it was being held hostage, that it was looking for a way to escape further deliberation, and that any verdict at that point would be a verdict based upon compromise – not the evidence.

Here, the jury first indicated deadlock, then outright expressed it, even stating that no amount of time would help. The fact that it did reach a verdict as to all charges does **not** indicate that it somehow overcame the deadlock through proper deliberation. Instead, by reaching a verdict after stating that such was impossible strongly indicates that the jury either reached a compromise verdict, giving-in to the trial court's coercion.

Doc. 1, pp. 20-21 (emphasis in original).

Swidas's contention is that the trial court's failure to conclude that the jury was deadlocked and declare a mistrial resulted in a denial of his constitutional rights. Doc. 1, pp. 20-21; Doc. 10, pp. 8-11. He argues that the jury's questions demonstrated that the jurors were deadlocked and, as a result of the trial court's failure to declare a mistrial and instead, instruct the jurors to continue in their deliberations, the verdict was based on a compromise and a violation of his due process rights. Doc. 1, pp. 20-21; Doc. 10, pp. 8-11.

Respondent argues that the state court of appeals' decision affirming the trial court's decision not to call a mistrial was not contrary to or an unreasonable application of clearly established federal law and/or was not based on an unreasonable determination of facts in light of the evidence presented.[8]  Doc. 6, pp. 20-26.

A "trial judge may discharge a genuinely deadlocked jury." *Arizona v. Washington*, 434 U.S. 497, 509 (1978). A "trial judge's decision to declare a mistrial when he considers the jury

---

[8] Respondent also argues that Swidas did not satisfy the exhaustion requirements with respect to Ground One, arguing that Swidas did not fairly present his claim to the state courts as a federal constitutional claim. Doc. 6, pp. 17-20. Swidas disputes this contention and argues that he did fairly present his claim in Ground One to the state courts as a federal constitutional claim and the state court of appeals considered it as such. Doc. 10, pp. 6-8. As discussed herein, the undersigned recommends that the Court deny Ground One on the merits. Thus, it is not necessary to evaluate the exhaustion issue. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

deadlocked is . . . accorded great deference by a reviewing court."  *Id* at 510; *Renico v. Lett*, 559 U.S. 766, 774 (2010) ("The decision whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge.")  The rationale is that "the trial court is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate."  *Id.* at 510, n. 28.   The Supreme Court has "expressly declined to require the 'mechanical application' of any 'rigid formula' when trial judges decide whether jury deadlock warrants a mistrial."  *Renico*, 559 U.S. at 775.

When a jury has become deadlocked, "[t]he use of a supplemental [jury] charge has long been sanctioned."  *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988).  (discussing on *Allen v. United States*, 164 U.S. 492 (1896)); *see also State v. Howard*, 42 Ohio St.3d 18, * 23-26 (1989) (declining to adopt the traditional *Allen* charge as the proper supplemental charge but recognizing that a supplemental charge may be warranted in instances where a jury has become deadlocked and providing the lower courts with a supplemental instruction that the Supreme Court of Ohio deemed appropriate).   However, a criminal defendant remains entitled to an uncoerced jury verdict.  *Lowenfield*, 484 U.S. at 241.   Whether a supplemental charge improperly coerces a jury is viewed in light of "all the circumstances."  *Lowenfield*, 484 U.S. at 237.

In addressing Swidas's Ground One claim, the state court of appeals stated:

{¶ 45} Appellant's fourth assignment of error states:

{¶ 46} "The trial court erred by failing to declare a mistrial when the jury expressly stated that it was hopelessly deadlocked and that further deliberations would have no affect on the deadlock."

{¶ 47} Under this assigned error, appellant argues that the trial court erred when it ordered the jury to keep deliberating after the jury notified the trial court that it

was "hopelessly deadlocked on two of the five charges" and that "no amount of deliberation will change this outcome."

{¶ 48} After the jury spent approximately five hours deliberating, it sent the trial court the following question: "What do we do if we are hung on two charges and agree on three charges?" This question was sent at 10:55 a.m. The trial court instructed the jury to "keep deliberating."

{¶ 49} Approximately four hours later, at 2:25 p.m., the jury informed the trial court that they were "hopelessly deadlocked on two of the five charges. No amount of deliberation will change this outcome." The jury then asked the trial court if it had to stay until 5:00 p.m.

{¶ 50} The court issued a supplemental instruction to the jury, commonly referred to as the *Howard* charge. See State v. Howard (1989), 42 Ohio St.3d 18, 537 N.E.2d 188, paragraph two of the syllabus. The *Howard* charge reads:

{¶ 51}"The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."

{¶ 52} After giving the *Howard* charge, the trial court instructed the jury to continue its deliberations.

{¶ 53} The next day, the jury began deliberating at 8:40 a.m. At 8:45 a.m., the jury presented the following question: "Should, in a month or three months, evidence come up that was not brought up in this trial, if we were a hung jury, can

Michael S. be retried versus finding him not guilty, for which he cannot be retried?"

{¶ 54} After discussion with the attorneys, the trial court asked the jury, "after a reasonable additional period of time today and Monday, do you believe that the jury might reach a verdict?" The jury foreperson answered in the affirmative. The jury resumed its deliberations and, subsequently, reached a verdict that same day.

{¶ 55} Appellant claims that the jury was deadlocked and, although it reached a verdict, it was a "compromised verdict, giving-in to the trial court's coercion."

{¶ 56} "Whether the jury is irreconcilably deadlocked is essentially 'a necessarily discretionary determination' for the trial court to make. Arizona v. Washington (1978), 434 U.S. 497, fn. 28, 98 S.Ct. 824, 54 L.Ed.2d 717. In making such a determination, the court must evaluate each case based on its own particular circumstances. State v. Mason (1998), 82 Ohio St.3d 144, 167, 694 N.E.2d 932. There is no bright-line test to determine what constitutes an irreconcilably deadlocked jury." State v. Brown, 100 Ohio St.3d 51, 796 N.E.2d 506, 2003–Ohio–5059, at ¶ 37.

{¶ 57} The jury in this case heard testimony from 16 witnesses spanning three days. After initially indicating that it was deadlocked, the trial court instructed the jury using a *Howard* charge, as that charge is "intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus." State v. Robb (2000), 88 Ohio St.3d 59, 81, 723 N.E.2d 1019. After receiving the *Howard* charge, the jury was able to continue its deliberations and reach a verdict. While the jury did make a further inquiry, they never informed the trial court that they continued to be deadlocked. In fact, the jury informed the trial court that they were able to reach a verdict. Consequently, we do not find the trial court abused its discretion in finding that the jury was not irreconcilably deadlocked.

{¶ 58} Appellant's fourth assignment of error is without merit.

*State v. Swidas*, 2010 WL 5550223, *5-7 (Ohio App. Dec. 23, 2010); *see also* Doc. 6-1, pp. 125-

128 (Eleventh District Ohio Court of Appeals Judgment Entry, Case No. 2009-L-104).

As acknowledged by Swidas (Doc. 10, pp. 7-8), the state court of appeals correctly

recognized and cited *Arizona v. Washington* as setting forth the standard for reviewing the trial

court's decision not to declare a mistrial, i.e., abuse of discretion. In applying this standard, the

state court of appeals concluded that the trial court did not abuse its discretion in concluding that the jury was not irreconcilably deadlocked.  Doc. 6-1, pp. 125-128.

"AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably*."  *Renico*, 559 U.S. at 776 (emphasis in original).  Thus, "it follows that, 'the more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway state courts have in reaching outcomes in case-by-case determinations.'"  *Id.* (internal citations omitted).  Considering the more general abuse of discretion standard applicable here, Swidas has not demonstrated that the state court of appeals decision that the trial court did not abuse its discretion when concluding that the jury was not irreconcilably deadlocked and providing a supplemental jury charge was contrary to or an unreasonable application of clearly established federal law.

As found by the state court of appeals, when presented with the jury's statement that it believed it was hopelessly deadlocked and no amount of deliberation would change the outcome, the trial court provided a supplemental *Howard* charge.  Doc. 6-5, pp. 5-11.  Swidas does not argue that the jury instructions given to the jury were defective nor does he challenge the precise language of the statements made by the trial court to the jury.  Doc. 10, pp. 7, 11.  Instead, Swidas contends that the jury was coerced when the trial court provided a supplemental *Howard* charge.  Doc. 10, pp. 9-11.  Swidas, however, has not demonstrated that providing a supplemental *Howard* charge following the jury's indication that it was deadlocked was contrary to or an unreasonable application of clearly established federal law.  *See Lowenfield*, 484 U.S. at 237 ("The use of a supplemental [jury] charge has long been sanctioned" and whether a supplemental charge improperly coerces a jury must be viewed in light of "all the circumstances.").  Nor has he demonstrated that the state court of appeals' determination that

Swidas's claim of jury coercion was without merit was contrary to or an unreasonable

determination of facts based on the evidence presented. As found by the state court of appeals,

the record also shows that, following the supplemental *Howard* charge, the jury continued to

deliberate. Doc. 6-5, pp. 11-14; Doc. 6-6, pp. 3-19. Further, as found by the state court of

appeals, while the jury returned with a further question following the *Howard* charge, when

asked by the trial court, "After a reasonable additional period of time today or Monday, do you

believe that the jury might reach a verdict?" the jury answered in the affirmative and ultimately

reached a verdict. Doc. 6-6, pp. 10-19.

Considering the deference accorded state court determinations under AEDPA, Swidas

has not demonstrated that the state court's determination of his claim that the trial court erred in

not finding the jury irreconcilably deadlocked was contrary to or an unreasonable application of

clearly established federal law or that the state court of appeals' decision was based on an

unreasonable determination of the facts in light of evidence presented. Accordingly, the

undersigned recommends that the Court **DENY** Ground One.

### 2. Ground Two

**Ground Two**: PETITIONER'S CONVICTIONS WERE NOT SUPPORTED BY
SUFFICIENT EVIDENCE AND THEREFORE HE IS BEING
INCARCERATED IN VIOLATION OF HIS RIGHTS TO DUE PROCESS OF
LAW UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**Supporting Facts**:

\*\*\*

Defendant was a regular victim of violence at the hands of Ulysses "Cory" A.
Altizer, IV and his friends including Naples. The bartender at Horvath's Pub on
the evening of November 12, 2008 noticed that Altizer was there when she
arrived at 11:30 pm. Defendant arrived sometime thereafter, noticed Altizer, and
went to the other end of the bar. Altizer noticed Defendant when Altizer was
walking to the restroom. By the time Altizer walked out of the restroom,

Defendant had left the bar without ever having ordered a drink, testifying that he retreated from the bar because of the prior assaults he had suffered at Altizer's hands.

Outside of Horvath's Defendant ran into and talked to a friend.  After the conversation, and as Defendant approached his car, he remotely unlocked it, causing the headlights to illuminate.  Just as he had opened the driver's side door to enter his vehicle, Defendant heard someone say "hey," and saw Altizer, and a man he later learned to be named Joseph Naples running toward him.

Fearing that another severe beating and robbery at Altizer's hands was imminent. Defendant reached into his car, pulled out a nine-shot revolver (loaded with eight rounds) and, from a standing point outside his vehicle, fired five shots in rapid succession to scare away his attackers.  Though one of his shots did strike Altizer's hand, Defendant testified that he was not trying to shoot anyone; he shot out of fear, not anger.  With his proficiency handling firearms, Defendant could have easily killed all of his attackers if shooting them had been his objective. Quickly starting his car and leaving, Defendant could have exited Horvath's parking lot by driving through his attackers but, instead, sped away from them.

Joseph Naples was not physically harmed by Defendant.  Therefore, in order to be convicted of committing felonious assault upon Naples, Defendant had to "knowingly" "attempt to cause physical harm" to Naples.  However, Defendant testified that he was not attempting to shoot anyone.  As set forth more fully below, Defendant's motive was to scare aware his attackers, not to shoot them.

Defendant admitted to tossing the revolver out of his moving car window.  He did so only *after* he saw that a police vehicle made a U-turn to follow him, and **with the purpose of not being shot by police**.  Though Defendant was wearing gloves when he fired the revolver, he did not throw those out of his car window and it was clear that the authorities following him would see that he had thrown the pistol out.  He made no effort to conceal this.

Defendant did not create the hostile situation that led to the incident on the night of November 12, 2008.  Defendant testified that he left the bar because he feared being beaten by Altizer yet again and left without placing a drink order.  By exiting Horvath's, Defendant fulfilled any duty he had to avoid or retreat from the danger of Altizer – assuming that even being near such a bully required Defendant to leave the premises.  However, in the parking lot, the very situation he was trying to avoid by leaving Horvath's was now upon him.  In fear of imminent, serious physical harm, Defendant reached for his revolver and fired.

With his skill, Defendant testified, he could have easily fired fatal shots at all of his attackers.  Instead, Defendant's shots were scattered and only hit Altizer's hand by chance.  Defendant's revolver was loaded with eight rounds, and he could have fired all of them at this attackers.  Instead, Defendant fired only five

16

shots.  Defendant could have driven his car right over Altizer and Naples as he sped away from the attack.  Instead, he drove in the opposite direction.  He did all of these things because, Defendant testified, he was trying to scare his attackers, not shoot them.  He was trying to get away from Altizer yet again.

Defendant's conduct upon encountering police further bolsters the argument for self-defense.  As soon as he saw police lights behind him, Defendant stopped his vehicle, illuminated the interior lights and placed his hands on the dashboard.  Though he was not blocked by the officers, Defendant did not attempt to speed away.  When stopped, Defendant cooperated and complied with police instructions.

Doc. 1, pp. 21-24 (emphasis in original).

Swidas contends that the evidence presented was insufficient to support his conviction for felonious assault as to Joseph Naples and was insufficient to support his conviction for tampering with evidence.  Doc. 1, pp. 21-24; Doc. 10, pp. 11-14.   Respondent argues that there was evidence sufficient to support the jury's verdicts and the state court of appeals' sufficiency determination was not contrary to or an unreasonable application of clearly established federal law.  Doc. 6, pp. 29-33.

On federal habeas review, a state court's determination regarding a sufficiency of evidence claim is entitled to a "double layer" of deference.  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  The first layer of deference goes to the factfinder; the second goes to the state reviewing court as required by AEDPA.  *Id.*

As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, 443 U.S. 307 (1979), is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Brown v. Konteh*, 567 F.3d at 205.   This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson*, 443 at 319.  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In making this determination, a court does not reweigh the evidence or redetermine the credibility of the witnesses.  *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

The second layer of deference goes to the state appellate court.  Even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

In reviewing Swidas's sufficiency of the evidence claim, the Ohio Court of Appeals articulated the proper standard for reviewing such claims, stating:

> {¶ 70} When measuring the sufficiency of the evidence, an appellate court must consider whether the state set forth adequate evidence to sustain the jury's verdict as a matter of law. Kent v. Kinsey, 11th Dist. No.2003–P–0056, 2004–Ohio– 4699, at ¶ 11. A verdict is supported by sufficient evidence when, after viewing the evidence most strongly in favor of the prosecution, there is substantial evidence upon which a jury could reasonably conclude that the state proved all elements of the offense beyond a reasonable doubt. State v. Schaffer (1998), 127 Ohio App.3d 501, 503, 713 N.E.2d 450, citing *State v. Schlee* (Dec. 23, 1994), 11th Dist. No. 93–L–082, 1994 Ohio App. LEXIS 5862, at *14–15.

18

*State v. Swidas*, 2010 WL 5550223, *8 (Ohio App. Dec. 23, 2010); *see also* Doc. 6-1, p. 131, ¶ 70 (Eleventh District Ohio Court of Appeals Judgment Entry, Case No. 2009-L-104).

<u>*Felonious Assault Conviction (Joseph Naples)*</u>

Regarding Swidas's claim that there was insufficient evidence to support his conviction for felonious assault with respect to Joseph Naples, the state court of appeals stated:

> {¶ 72} Appellant was convicted of felonious assault, in violation of R.C. 2903.11(A)(2). In order to convict appellant on felonious assault, the state had to prove, beyond a reasonable doubt, that appellant did knowingly cause or attempt to cause physical harm to Naples by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(2).
>
> {¶ 73} R.C. 2901.22(B) provides: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
>
> {¶ 74} The jury heard testimony that as Altizer and Naples exited the bar, appellant began to fire toward them. Naples testified that "there were a few shots that came relatively close [to him], where I heard the bullet go by." Naples stated that he heard the bullets go by "his face; one on [his] right side and one on [his] left side." See State v. Dixson, 1st Dist. No. C–030227, 2004–Ohio–2575, at ¶ 28. (Affirming appellant's felonious assault conviction where the state presented evidence that Dixson had knowingly fired a gun at the four occupants of a vehicle.) We hold a rational jury could conclude, beyond a reasonable doubt, that appellant knowingly attempted to cause Naples physical harm by means of a deadly weapon, to wit: a firearm.

*State v. Swidas*, 2010 WL 5550223, *8-9 (Ohio App. Dec. 23, 2010); *see also* Doc. 6-1, pp. 131-132, ¶¶ 71-74 (Eleventh District Ohio Court of Appeals Judgment Entry, Case No. 2009-L-104).

Swidas argues that there was insufficient evidence to convict him of felonious assault with respect to Joseph Naples because Joseph Naples was not physically harmed and because he testified that he was only trying to scare his attackers not shoot anyone.  Doc. 10, pp. 12-13. Even though Joseph Naples was not physically injured, considering the evidence presented to the jury, including the testimony of Joseph Naples (Doc. 6-2, pp. 52-53), a rational trier of fact could

have found that the prosecution had proven the essential elements of felonious assault with respect to Joseph Naples beyond a reasonable doubt. *See Jackson*, 443 U.S. 307.  Thus, federal habeas relief is not warranted based on Swidas's sufficiency of the evidence claim regarding the conviction for felonious assault of Joseph Naples.

Further, even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, federal habeas relief is not warranted because Swidas has not shown that the court of appeals' determination that a rational trier of fact could find Swidas guilty beyond a reasonable doubt of felonious assault of Joseph Naples was unreasonable.  Thus, deference is due the state court of appeals' sufficiency determination.  *See Brown*, 567 F.3d at 205; *see also White*, 602 F.3d at 710.

*Tampering with Evidence*

Regarding Swidas's claim that there was insufficient evidence to support his conviction for tampering with evidence, the state court of appeals stated:

{¶ 75} Appellant also claims that the evidence was insufficient to prove that he tampered with evidence. The offense of tampering with evidence, as set forth in R.C. 2921.12(A)(1) provides:

{¶ 76} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

{¶ 77} "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶ 78} Appellant concedes that he threw the firearm out of his vehicle's window; however, he maintains that he threw it out of the window "with the purpose of not being shot by the police." Upon a review of the record, we find that appellant's conviction for tampering with evidence is supported by ample evidence.

{¶ 79} The jury heard appellant testify that after he discharged five rounds of ammunition, he immediately left the scene in his vehicle. While driving, appellant observed emergency personnel coming toward his vehicle. Appellant stated that he knew the police were investigating or would be investigating the shooting. Then, when one of the police vehicles made a U-turn to follow him, he threw the

firearm out the window. The police vehicle followed appellant's vehicle with its lights activated. When the officer conducted a pat-down search of appellant's person, appellant did not inform the officer that he had thrown a firearm, containing live rounds, out of his vehicle window. Appellant, in fact, indicated to the officer that he did not have a firearm. Therefore, the jury could have found beyond a reasonable doubt that appellant was attempting to conceal or remove the firearm with the purpose to impair its availability as evidence in a legal proceeding or investigation.

*State v. Swidas*, 2010 WL 5550223, *9 (Ohio App. Dec. 23, 2010); *see also* Doc. 6-1, pp. 132-133, ¶¶ 75-79 (Eleventh District Ohio Court of Appeals Judgment Entry, Case No. 2009-L-104).

Swidas argues that the evidence was insufficient to convict him of tampering with evidence because, as he testified, his purpose in throwing the gun out his window was not to conceal evidence but rather to avoid being shot when pulled over by the police.  Doc. 10, p. 14. However, considering the evidence presented to the jury, as detailed by the state court of appeals (Doc. 6-4, pp. 53-54, 56-57, 62), a rational trier of fact could have found that the prosecution had proven the essential elements of tampering with evidence beyond a reasonable doubt. *See Jackson*, 443 U.S. 307.  Thus, federal habeas relief is not warranted based on Swidas's sufficiency of the evidence claim regarding the tampering with evidence conviction.

Further, even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, federal habeas relief is not warranted because Swidas has not shown that the court of appeals' determination that a rational trier of fact could find Swidas guilty beyond a reasonable doubt of tampering with evidence was unreasonable. Thus, deference is due the state court of appeals' sufficiency determination.  *See Brown*, 567 F.3d at 205; *see also White*, 602 F.3d at 710.

Considering the deference due both a jury's determination of guilt and a state court of appeals' sufficiency determination, Swidas has not demonstrated an entitlement to federal habeas

relief based on his sufficiency of the evidence claims. Accordingly, the undersigned recommends that the Court **DENY** Ground Two.

### IV. Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DENY** Swidas's Petition.

Dated: November 23, 2015

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).