PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL T. SWIDAS, | ) | |
| | ) | CASE NO.  1:13CV2260 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| BRIGHAM SLOAN, Warden, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | [Resolving ECF No. 13] |

Petitioner Michael T. Swidas, an Ohio prisoner at the Lake Erie Correctional Institution,

through counsel, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF

No. 1), alleging two (2) grounds for relief which challenge the constitutional sufficiency of his

convictions in Lake County, Ohio Court of Common Pleas Case No. 08CR000719.  The case

was referred to Magistrate Judge Kathleen B. Burke for a Report and Recommendation pursuant

to 28 U.S.C. § 636 and Local Rule 72.2.  The magistrate judge subsequently issued a Report &

Recommendation (ECF No. 12).  In her Report, the magistrate judge recommends that the Court

deny the petition on the merits.  Petitioner filed timely Objections to the Magistrate Judge's

Report (ECF No. 13).  The Court, after reviewing the Objections, hereby adopts the Report and

denies the Petition.

**I.  Facts**

In January 2009, Petitioner was indicted on one count of attempted murder, with firearm

specifications as set forth in Ohio Rev. Code §§ 2941.145 and 2941.146 ("Count One"); two

counts of felonious assault, each with firearm specifications as set forth in §§ 2941.145 and

(1:13CV2260)

2941.146 ("Counts Two and Three"); one count of tampering with the evidence ("Count Four");

and one count of carrying concealed weapons ("Count Five"), with an additional finding that

Petitioner had previously been convicted of an offense of violence.  ECF No. 6-1 at PageID #:

73-76.  The case proceeded to a jury trial on Monday, June 15, 2009.  On Friday, June 19, 2009,

the jury found Petitioner guilty of Counts Two, Three, Four, and Five.  Petitioner was found not

guilty on Count One.  ECF No. 6-1 at PageID #: 82-93.  In July 2009, Petitioner was sentenced

to an eight-year term of imprisonment on Count Two; a three-year term of imprisonment on

Count Three; a three-year term of imprisonment on Count Four; and a one-year term of

imprisonment on Count Five.  The trial court ordered that Counts Two, Three, and Four be

served consecutive to each other but concurrent to Count Five.  Petitioner was also sentenced to

an additional eight-year term of imprisonment as to the firearm specifications attached to Count

Two (three years as to § 2941.145 and five years as to § 2941.146) as a mandatory prison term to

be served consecutive to each other but prior to and consecutive to the 14-year term for the

underlying felonies.  The firearm specifications attached to Count Three merged with the firearm

specifications attached to Count Two.  Therefore, the trial court sentenced Petitioner to an

aggregate term of 22 years.  ECF No. 6-1 at PageID #: 94-97.

In December 2010, the Eleventh District Court of Appeals of Ohio affirmed Petitioner's

convictions.  *State v. Swidas*, No. 2009-L-104, 2010 WL 5550223 (Ohio App. 11th Dist. Dec.

23, 2010) (ECF No. 6-1 at PageID #: 186-214).  In October 2012, the Ohio Supreme Court held

that the Ohio Rev. Code § 2941.146 firearm specification attached to Count Two was not

applicable to Petitioner who fired a weapon while standing with both feet planted on the ground

2

(1:13CV2260)

with no substantial physical connection with the motor vehicle, *State v. Swidas*, 133 Ohio St.3d 460 (2012) (ECF No. 6-1 at PageID #: 318-29), and Petitioner was resentenced by the trial court to an aggregate prison term of 17 years (ECF No. 6-1 at PageID #: 330-34).  Petitioner did not further appeal to the United States Supreme Court.

On October 11, 2013, Petitioner filed the instant Petition for a Writ of Habeas Corpus (ECF No. 1).

## II.  Standard of Review for a Magistrate Judge's Report and Recommendation

When objections have been made to the Magistrate Judge's Report and Recommendation, the District Court standard of review is *de novo*.  Fed. R. Civ. 72(b)(3). A district judge:

> must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*

Accordingly, this Court has conducted a *de novo* review of the portions of the Magistrate Judge's Report to which Petitioner has properly objected.

## III.  Law & Analysis

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus may not be granted unless the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(1:13CV2260)

>       (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *see also* *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001).  The task of the Court is not to determine whether the Eleventh District Court of Appeals of Ohio's decision was right or wrong.  Instead, under the AEDPA, the Court must decide whether the state appellate court's adjudication of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  As the United States Supreme Court has explained:

> an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.  This distinction creates a substantially higher threshold for obtaining relief than *de novo* review.  AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Renico v. Lett*, 559 U.S. 766, 773(2010) (internal citations and quotations omitted) (emphasis in original).

### A.  Ground One

"Considering the deference accorded state court determinations under AEDPA," the magistrate judge concluded that Petitioner "has not demonstrated that the state court's determination of his claim that the trial court erred in not finding the jury irreconcilably deadlocked was contrary to or an unreasonable application of clearly established federal law or that the state court of appeals' decision was based on an unreasonable determination of the facts in light of evidence presented."  ECF No. 12 at PageID #: 1003.  Petitioner argues the magistrate

4

(1:13CV2260)

judge's determination is not supported by the record.  ECF No. 13 at PageID #: 1011.  The Court

disagrees.

The jury in this case heard testimony from 16 witnesses spanning three days.  *Swidas,*

*2010 WL 5550223, at *7, ¶ 57.*  On the afternoon of Wednesday, June 17, 2009, the case was

submitted to the jury and they deliberated "for an hour, an hour and a half, something like that."

Trial Transcript (ECF No. 6-5) at PageID #: 809.  They resumed their deliberations the next day

at 8:30 a.m.  At 10:55 a.m., the jury posed the following question for the trial court to answer:

"What do we do if we are hung on two charges and agree on three charges?"  ECF No. 6-5 at

PageID #: 809.  The following discussion was had:

> MR. PARTLOW:      Well Judge, for the record, I've got to say that I
> think we've got a hung jury, to preserve my record.  On the other hand, I
> recognize the Court's probably not going to agree with me, and the real question
> is, what instruction are you going to give them?  Without waiving anything, of
> course.
> JUDGE LUCCI:      I think, at this point, it should be just a two-worder.
> Keep deliberating.
> MR. CONDON:      The State's fine with that.
> MR. PARTLOW:      That's fine.  Here again, without waiving my
> position that we have a hung jury.

ECF No. 6-5 at PageID #: 810-11.

At 2:25 p.m. that Thursday afternoon, the jury posed another question:  "We are

hopelessly deadlocked on two of the five charges.  No amount of deliberation will change this

outcome.  Do we have to stay 'till 5:00 p.m.?"  ECF No. 6-5 at PageID #: 811.  The trial court

decided it would give the first two sections of the current charge from Ohio Jury Instructions,

CR 429.09 "Possibility of a verdict."  2 OJI-CR 429.09.  ECF No. 6-5 at PageID #: 811.

Petitioner concedes that this is the proper jury instruction in the event the jury could possibly

5

(1:13CV2260)

render a verdict.  *State v. Howard*, 42 Ohio St.3d 18 (1989) (holding that a traditional *Allen*

charge was not a proper supplemental instruction to be given to juries deadlocked on the

question of conviction or acquittal).[1]  Petitioner objects, however, that "this instruction should

not have been given at all in light of the facts and circumstances of the case."  ECF No. 13 at

PageID #: 1013.  The trial court determined that it would give a remaining section(s) of the

current version of 2 OJI-CR 429.09, the *Howard* charge, that addresses the situation where a

verdict may be impossible to achieve "if they come back and again say that they can't do it."

ECF No. 6-5 at PageID #: 813.  The following discussion occurred:

> MR. PARTLOW:        Well, Your Honor, obviously, I would state my
> objection.  As I've said before, it sounds like we have a deadlock.  They've said,
> for lack of a better term, the magic words "helplessly deadlocked," "no amount of
> time."  Under those circumstances, I would say that we do indeed have a deadlock
> and the Court should treat it as such and bring them back.  If the Court is asking
> me as far as the form of that instruction--
>          JUDGE LUCCI:        The legal accuracy of it, you have no objection.
>          MR. PARTLOW:        I don't have--  I mean, it seems to conform with,
> essentialy, an *Allen*[2] charge, so I don't have any--
>                              *   *   *
> objection to the form.
>          JUDGE LUCCI:        The way I look at it, we've been here now, you
> know, almost four complete days. . .
>                              *   *   *
> So I'm going to give them that instruction, and we'll see what they come back
> with.

---

[1]  A *Howard* charge is a jury instruction designed to be given to a jury that
believes it is deadlocked in order to "challenge [the jury] to try one last time to reach a
consensus."  *State v. Robb*, 88 Ohio St.3d 59, 81 (2000).

[2]  *Allen v. United States*, 164 U.S. 492 (1896).  When a jury is deadlocked, a trial
court may give a supplemental charge urging the jury to continue its deliberations in
order to arrive at a verdict.  *Id.* at 501.  An *Allen* charge is sometimes referred to as a
"dynamite" charge.

(1:13CV2260)

ECF No. 6-5 at PageID #: 813-15.

The jury resumed their deliberations on Friday, June 19, 2009, at 8:40 a.m.  Trial

Transcript (ECF No. 6-6) at PageID: #: 828, 829.  Five minutes later, the jury posed another

question for the trial court to answer:  "Should, in a month or three months, evidence come up

that was not brought up in this trial, if we were a hung jury, can Michael S. be retried versus

finding him not guilty, for which he cannot be retried?"  ECF No. 6-6 at PageID: #: 823.  The

trial court decided at 10:00 a.m. that it would give the last two sections of the current charge

from 2 OJI-CR 429.09 in response to the question:

> JUDGE LUCCI:          Well, how about if I give them this one, the OJI. . . .
>                      *   *   *
> . . . I'm interested in knowing whether there's a possibility of reaching a verdict
> within a reasonable time.  For that purpose, I will submit the question to that
> possibility to the foreperson.  When the question is submitted to the foreperson,
> it's to be answered by either yes or no, with no other comment.  You are not to
> reveal any other information regarding your deliberations, including the status of
> them.  When you are returned to the courtroom, I will now ask the foreperson,
> After a reasonable additional period of time today or Monday, do you believe that
> the jury might reach a verdict?  Any problem with that from the State?
>
> MR. CONDON:          No.
> JUDGE LUCCI:          Any problem Mr. Partlow?
> MR. PARTLOW:          (No oral response.)
> JUDGE LUCCI:          How long?  Tell them fifteen minutes, [the bailiff]
> will come back for them?
> MR. CONDON:          That's fair.
> MR. PARTLOW:          Sure.

ECF No. 6-6 at PageID #: 829-31.  The trial court then brought the jury back into the courtroom

and questioned the foreperson as to whether the jury could reach a verdict if given additional

time to deliberate:

7

(1:13CV2260)

> JUDGE LUCCI: . . . Mr. [Foreperson], after a reasonable additional period of time today and Monday, do you believe that the jury might reach a verdict?
> [Foreperson]: Yes, Your Honor.
> JUDGE LUCCI: Then you are returned to the jury room to continue your deliberations.

ECF No. 6-6 at PageID #: 832. The jury returned verdicts later that morning. Petitioner objects that the Magistrate Judge was mistaken in the analysis in this area. According to Petitioner, "[t]his immediate answer by the jury, followed by an almost immediate verdict within the hour thereafter, is clearly indicative of a 'compromise verdict' reached by the jury." ECF No. 13 at PageID #: 1013.

The constitutionality of a deadlocked jury instruction depends upon whether the instruction in question was "coercive." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). The *Lowenfield* jury deliberated for only thirty more minutes after the *Allen* charge was given. *Id.* at 235. The Court made clear in that case that a trial court should not give the jury a "coercive" instruction – though the *Lowenfield* Court actually held that the instruction in that case was not coercive. *Id.* at 241 ("We hold that on these facts the combination of the polling of the jury and the supplemental instruction was not 'coercive' in such a way as to deny petitioner any constitutional right."). "[C]oerciveness must be judged on the totality of the circumstances." *Wong v. Smith*, 562 U.S. 1021, 1023 (2010). Viewing the supplemental charge given by the trial court in light of all the circumstances, the Court agrees with the recommendation of the magistrate judge that Ground One be denied on the merits. *See* ECF No. 12 at PageID #: 998 n. 8.

**B. Ground Two**

8

(1:13CV2260)

### 1.  Felonious Assault Conviction (Joseph Naples)

The jury heard testimony that as the victims, Ulysses Altizer and Joseph Naples, exited the bar, Petitioner began to fire toward them.  *Swidas*, 2010 WL 5550223, at *9, ¶ 74.  The Ohio Court of Appeals held "a rational jury could conclude, beyond a reasonable doubt, that appellant knowingly attempted to cause Naples physical harm by means of a deadly weapon, to wit:  a firearm."  *Id.*

The magistrate judge concluded "[e]ven though Joseph Naples was not physically injured, considering the evidence presented to the jury, including the testimony of Joseph Naples . . ., a rational trier of fact could have found that the prosecution had proven the essential elements of felonious assault with respect to Joseph Naples beyond a reasonable doubt."  ECF No. 12 at PageID #: 1007-1008.  Petitioner argues his conviction for felonious assault against Mr. Naples was not supported by sufficient evidence.  ECF No. 13 at PageID #: 1014-16.  According to Petitioner, the discrepancy concerning this issue is whether there was any evidence tending to show that he intended physical harm to Mr. Naples.  ECF No. 13 at PageID #: 1015.

Mr. Naples testified:

Q.  (By Ms. Neroda)  How many shots did you hear?
A.  Five or six, I believe.
Q.  And were you able to tell where they were in relation to you?
A.  Um--  Close, very close.
Q.  How do you know that, Joe?
A.  Actually, there [were] a few shots that came relatively close, where I heard the bullet go by.
Q.  Okay; you heard the bullet go by.
A.  Yes, ma'am.
Q.  Go by what?
A.  My face; one on my right side and one on my left side.

9

(1:13CV2260)

Trial Transcript (ECF No. 6-2) at PageID #: 386-87.  Petitioner relies on the testimony of a

state's witness, Robert A. Bendes (ECF No. 6-2 at PageID #: 338-52), to support his argument

that "it is quite clear that the Petitioner had no intention of harming Mr. Naples.  Rather, he was

firing warning shots."  ECF No. 13 at PageID #: 1016.

The Ohio Court of Appeals' reasoning on Petitioner's conviction for felonious assault

against Mr. Naples is well-explained and is not shown to be unreasonable in any way.  As the

magistrate judge correctly noted, deference is due the state court of appeals' sufficiency

determination as long as it is not unreasonable.  *See Brown v. Konteh*, 567 F.3d 191, 205 (6th

Cir. 2009); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

### 2.  Tampering with Evidence                                          L

The Ohio Court of Appeals stated:

> The jury heard [Petitioner] testify that after he discharged five rounds of
> ammunition, he immediately left the scene in his vehicle.  While driving,
> [Petitioner] observed emergency personnel coming toward his vehicle.
> [Petitioner] stated that he knew the police were investigating or would be
> investigating the shooting.  Then, when one of the police vehicles made a U-turn
> to follow him, he threw the firearm out the window.  The police vehicle followed
> [Petitioner's] vehicle with its lights activated.  When the officer conducted a
> pat-down search of [Petitioner's] person, [he] did not inform the officer that he
> had thrown a firearm, containing live rounds, out of his vehicle window. [Petitioner], in fact, indi

*Swidas*, 2010 WL 5550223, at *9, ¶ 79.  Therefore, the state court of appeals held "the jury could

have found beyond a reasonable doubt that [Petitioner] was attempting to conceal or remove the

firearm with the purpose to impair its availability as evidence in a legal proceeding or

investigation"  *Id.*

10

(1:13CV2260)

The magistrate judge concluded "considering the evidence presented to the jury, as detailed by the state court of appeals [ECF No. 6-4 at PageID #: 661-62, 664-65, 670], a rational trier of fact could have found that the prosecution had proven the essential elements of tampering with evidence beyond a reasonable doubt."  Petitioner argues his conviction for tampering with evidence was not supported by sufficient evidence.  ECF No. 13 at PageID #: 1016-17.  He testified during direct examination that the only reason he threw the weapon from the vehicle was to attempt to insure that the police authorities knew that he did not have a weapon. Petitioner did not want to be the victim of an accidental shooting:

> Q.     Okay, so why did you throw the gun out the window?
> A.     I didn't want the police to shoot me.
> Q.     You didn't want what?
> A.     I didn't want the police to shoot me.  I didn't want it to become an accidental shooting because I had a gun in the car.

ECF No. 6-4 at PageID #: 662.  According to Petitioner, "[t]here is simply nothing in the record to indicate otherwise."  ECF No. 13 at PageID #: 1016.  However, he testified on cross-examination:

> Q.     . . .You testified that the reason you got rid of the gun is for your safety, you didn't want the police to shoot you.
> A.     Yes.
> Q.     But when you were pulled over and brought out of the car and patted down and indicated that you didn't have a firearm on you, you never told them, Hey, I ditched the gun back on 305 and it's still got live rounds in it?  You never said that, did you?
> A.     No.

ECF No. 6-4 at PageID #: 670.

(1:13CV2260)

As the magistrate judge correctly noted, deference is due the Ohio Court of Appeals'

sufficiency determination as long as it is not unreasonable.  *See Brown*, 567 F.3d at 205; *see also*

*White*, 602 F.3d at 710.

Considering the deference due both a jury's determination of guilt and a state court of

appeals' sufficiency determination, *Belmonte v. Cook*, 567 Fed.Appx. 331, 334 (6th Cir. 2014),

the Court agrees with the recommendation of the magistrate judge that Petitioner has not

demonstrated an entitlement to federal habeas relief based on Ground Two – his sufficiency of

the evidence claims.  *See* ECF No. 12 at PageID #: 1009-10.

### IV.  Conclusion

Petitioner's Objections (ECF No. 13) are overruled and the Report & Recommendation

(ECF No. 12) of the magistrate judge is adopted.  Michael T. Swidas' Petition for a Writ of

Habeas Corpus is denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision

could not be taken in good faith, and that there is no basis upon which to issue a certificate of

appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).


IT IS SO ORDERED.


March 29, 2017                                       */s/ Benita Y. Pearson*
Date                                                        Benita Y. Pearson
                                                              United States District Judge

12